**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

ZACHRY ALEXANDER BROWN, and
ZAC BROWN COLLECTIVE, INC.,

               Plaintiffs,

v.

KELLY YAZDI,

               Defendant.

Civil Action No. 1:24-CV-2203

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Dated: January 22, 2025

David L. Balser
Brandon R. Keel
Mandi Youngblood
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100

*Counsel for Plaintiffs Zachry*
*Alexander Brown and Zac Brown*
*Collective, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

BACKGROUND ........................................................................................5

ARGUMENT ............................................................................................11

   I.   THE EMPLOYEE AGREEMENT COMPLIES WITH THE GRCA. ........11

   II.   THE CONFIDENTIALITY AGREEMENT ALSO COMPLIES WITH THE
      GRCA. ...........................................................................................16

   III.  ALTERNATIVELY, THE COURT SHOULD BLUE PENCIL THE
      AGREEMENTS TO PROVIDE THE FULLEST PROTECTION
      PERMITTED UNDER THE GRCA. ...............................................20

   IV.  THE MOTION SHOULD BE DENIED BECAUSE MS. YAZDI
      BREACHED INDEPENDENT AGREEMENT PROVISIONS. ................25

CONCLUSION ........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*2Die4Kourt v. Hillair Cap. Mgmt., LLC*,
2016 WL 4487895 (C.D. Cal., 2016), *aff'd,* 692 F. App'x 366 (9th
Cir. 2017) ...........................................................................................................19

*Baldwin v. Express Oil Change*,
87 F.4th 1292 (11th Cir. 2023) ..........................................................................22

*BRP Colleague Inc. v. Gillen*,
2023 WL 3641954 (N.D. Ga. Mar. 7, 2023) ......................................................11

*Kelly v. Primco Mgmt., Inc.*,
2015 WL 10990368 .............................................................................................18

*Mariner Health Care Mgmt. Co. v. Sovereign Healthcare, LLC*,
306 Ga.App. 873 (2010) .....................................................................................21

*Mathews v. Clark Atlanta Univ., Inc.*,
2021 WL 4896330 (N.D. Ga. Feb. 23, 2021)......................................................25

*Motorsports of Conyers, LLC v. Burbach*,
892 S.E.2d 719 (Ga. 2023) .................................................................................21

*Paisley Park Enterprises, Inc. v. Boxill*,
253 F.Supp.3d 1037 (D. Minn. 2017)..................................................................19

*Pan Am Dental, Inc. v. Trammell*,
2020 WL 2531622 (S.D. Ga. May 18, 2020) ......................................................23

*PointeNorth Ins. Grp. v. Zander*,
2011 WL 4601028 (N.D. Ga. Sept. 30, 2011).....................................................23

*Refresco Beverages US Inc. v. Califormulations, LLC*,
2021 WL 4316015 (M.D. Ga. Sept. 22, 2021) ...................................................23

*Unified Gov't of Athens-Clarke Co. v. Stiles Apartments, Inc.*,
295 Ga. 829 (2014) .............................................................................................21

**Statutes**

O.C.G.A. § 13-8-50.................................................................................15

O.C.G.A. § 13-8-51(3).......................................................................12, 23

O.C.G.A. § 13-8-54(a)....................................................................12, 15, 20

O.C.G.A. § 13-8-56(3).............................................................................17

## INTRODUCTION

In some ways, a contract is only as good as the word of the person signing it. If a party is intent on ignoring its contractual obligations, it will do so, and, at a minimum, will force the opposing party to incur the burden and expense of seeking redress for breach through the courts. That is what has happened in this case.

Defendant Kelly Yazdi has proven time and again that she will disregard her contractual obligations whenever it suits her.

- She signed a 38-page prenuptial agreement with Zac Brown on August 31, 2023, and then promptly sought to have that agreement invalidated after they were divorced only four months later.

- She signed a Confidentiality Agreement with her employer, Zac Brown Collective, Inc. ("ZBC"), agreeing that she would make no public comment about ZBC or its owner, Mr. Brown, without authorization. Yet she then took to social media following the divorce calling Mr. Brown a narcissist and falsely accusing him of emotional abuse.

- She signed an Employee Agreement and Employee Handbook with ZBC prohibiting her from using ZBC's confidential information except as authorized by the company, or from sending work documents to her personal email address. But between January and February 2024, after she knew she was leaving ZBC, Ms. Yazdi forwarded nearly 200 emails from her work email address to her personal email address, without the knowledge or authorization of ZBC or Mr. Brown. Among those documents was highly confidential information about ZBC's business, including sensitive financial valuations of Mr. Brown's music catalog and wine company, spreadsheets containing employee compensation, confidential contracts with third parties, and sensitive marketing materials for a yet-to-be-released song.

Ms. Yazdi's intent was clear—she transferred confidential information from her ZBC email to her personal email for the purpose of using it against Mr. Brown and

ZBC in the divorce and separation of her employment. She admitted as much in her deposition. *See* SAF ¶ 51; Ex. 1 at 82:6-12 ("I forwarded this email to myself because I believed it to be[] relevant to defending myself in the divorce proceedings . . . ."), 145:24–147:8 ("I knew that these financial documents would be important . . . to defending myself in my divorce, and I was right.").

Now, faced with indisputable evidence of a breach, Ms. Yazdi has responded not by denying these facts but rather by arguing that her employment agreements with ZBC are unenforceable under the Georgia Restrictive Covenants Act ("GRCA"). She asks this Court to find that the confidentiality protections in her Employee Agreement and Confidentiality Agreement go beyond what is permitted by Georgia law and therefore that these agreements have no legal effect whatsoever. Continuing her trend, Ms. Yazdi makes these arguments despite having expressly agreed in her employment agreements that she would not do so and that if any provision of the agreements were deemed to be invalid, the parties' intent was for such provision to be revised to provide the fullest protection permitted under the law.

Ms. Yazdi's desperate attempt to have the Court invalidate the parties' agreements is not only contrary to the agreements' plain language, it runs afoul of the GRCA's purpose to protect "all legitimate business interests." O.C.G.A. § 13-8-54(a). Ms. Yazdi's motion in that regard raises important policy considerations. It is, for example, beyond dispute that the information she took from ZBC included

confidential business information that is properly restricted under the GRCA. She is thus asking this Court to strip ZBC of all protections for its legitimate business interests on the basis that the agreements in theory also could protect information that is not at issue here. The Court should not grant Ms. Yazdi a free pass for blatantly stealing business information and should deny her motion for several reasons.

**First**, the Court need look no further than Ms. Yazdi's Employee Agreement because the confidentiality protections therein are entirely consistent with the GRCA. Contrary to Ms. Yazdi's arguments, the Employee Agreement does not extend beyond protecting "data or information 'relating to the business'" of ZBC, ECF 56 at 10–11, nor to information irrespective of "whether Ms. Yazdi Brown learned it as an employee of ZBC," *id.* at 1. The plain language of the Employee Agreement defines "Confidential Information" to "mean any and all data and information ***relating to the business of [ZBC] and/or its affiliated entities*** . . . that is disclosed to, developed by or learned by [Ms. Yazdi] ***in the course of [her] employment with [ZBC]*** which has value to [ZBC] and is not generally known to [ZBC]'s competitors." ECF 56-6 § 3(b) (emphasis added). There is no relevant distinction between that definition and what is permitted under the GRCA.

**Second**, even if the Court looks to the separate Confidentiality Agreement, which it need not given that the stolen documents at issue are independently protected under the Employee Agreement, it should deny Ms. Yazdi's motion

because the Confidentiality Agreement, too, is consistent with the GRCA. According to Ms. Yazdi, the initial question for enforceability is "whether the employer is attempting to protect confidential information relating to the business," ECF 56 at 3. Here, Ms. Yazdi contends that the Confidentiality Agreement is unenforceable because it protects non-public information concerning Mr. Brown and the Zac Brown Band that is "'unrelated to the protection of Plaintiff's legitimate business interests.'" *Id.* (quoting *Mercer Glob. Advisors Inc. v. Crowley*, 2023 WL 2531727, *5 (N.D. Ga. Mar. 15, 2023)). But she is wrong.

What Ms. Yazdi ignores is that non-public information concerning Mr. Brown and his band ***does*** relate to the legitimate business interests of ZBC. After all, ZBC is the umbrella entity through which Mr. Brown conducts his business—his music and his many other business assets. *See* SAF ¶¶ 2-3; Ex. 4 ¶¶ 2-3. The nature of this business—owned by a Grammy-award winning celebrity and entrepreneur—distinguishes this case from *Mercer* or any of the other authorities Ms. Yazdi relies upon. As courts have long recognized, the persona and public image of a celebrity is a protectable business asset. *See, e.g.*, *Kelly v. Primco Mgmt., Inc.*, 2015 WL 10990368, at *15 (C.D. Cal. Jan. 12, 2015). ZBC has a legitimate interest in protecting non-public information concerning its owner, and the Confidentiality Agreement Ms. Yazdi signed properly seeks to protect that business information.

***Third***, if the Court were to nonetheless conclude that the protections are too broad, the parties agreed that such a finding would not make the agreements unenforceable but rather that the "covenant shall be adjusted or modified to the extent necessary to cure [any] invalidity." SAF ¶ 25; ECF 56-6 § 10. Ms. Yazdi, again, ignores that the parties' intent is reflected in the agreements themselves. The parties agreed that these protections should be applied to the fullest extent permitted under the law. The Court should honor that intent and blue pencil the protections if it were to find that they are too broad as written. That is particularly necessary here, where the information Ms. Yazdi took is confidential business information properly restricted under the GRCA, and voiding these agreements would unfairly strip ZBC of its legitimate protections and reward Ms. Yazdi for blatantly violating the terms.

***Finally***, Ms. Yazdi's motion must be denied because by forwarding ZBC information to her personal email address, she violated her Employee Agreement and the incorporated ZBC policies irrespective of the parties' dispute concerning the scope of the confidentiality protections. For each of these reasons, ZBC and Mr. Brown request that the Court deny Ms. Yazdi's motion for summary judgment.

## <u>BACKGROUND</u>

Mr. Brown is the owner and operator of ZBC, a lifestyle and entertainment company with many distinctive brands under its umbrella and through which Mr. Brown conducts his various businesses. SAF ¶¶ 1-2; ECF 56-1 ¶¶ 3-4. In August

2022, Mr. Brown hired Ms. Yazdi to work as a Social Media Manager for ZBC. ECF

56-1 ¶ 6. As a condition of her employment, Ms. Yazdi entered into an Employee

Agreement dated August 24, 2022. SAF ¶ 17; ECF 56-6. The agreement contains a

confidentiality provision that defines "Confidential Information" as:

> [A]ny and all data and information relating to the business of
> Company and/or its affiliated entities, including data and information
> relating to any third parties with whom Company does business
> (including its clients and prospective clients), that is disclosed to,
> developed by or learned by you in the course of your employment
> with Company which has value to Company and is not generally
> known to Company's competitors . . . .

ECF 56-6 § 3(b).[1]

As to the restrictions on use, the Employee Agreement provides that Ms. Yazdi

(i) "shall not disclose any Confidential Information, or use any Confidential

Information, except as authorized by [ZBC]," *id.* § 3(c); (ii) "shall only make such

copies of Confidential Information as are absolutely necessary for [her] to perform

[her] employment duties with Company," *id.*; and (iii) must return all Confidential

Information to ZBC "immediately upon the termination of [her] employment," *id.*

§ 7. Ms. Yazdi further agreed that she would "comply with all procedures and

---

[1] "Confidential Information," however, expressly excludes information that (i) "has
been voluntarily disclosed to the public by company or the other relevant Protected
Party, except where such public disclosure has been made by [employee] without
authorization," (ii) "is independently developed by [employee] without the use of,
or resort to, protected data or information," or (iii) "which has otherwise entered the
public domain through lawful means." *Id.*

policies respecting Confidential Information that Company may promulgate from time to time," *id.*, that she would use ZBC's "computer resources and systems . . . only to the extent authorized," *id.* § 9, and that she would "comply with all policies and procedures concerning the security of Company's computer resources and systems that Company may issue from time to time," *id.*

ZBC's referenced policies are also enumerated in ZBC's Employee Handbook, which Ms. Yazdi signed on January 1, 2023, acknowledging that she understood, agreed to comply with, and was ███████████████████████ therein. SAF ¶¶ 35-36; Ex. 5 at 44. That includes an express prohibition against employees sending company emails to their personal email. SAF ¶ 40; Ex. 5 § 3.9 ███████████████████████████████████████

In addition to the Employee Agreement and Employee Handbook, Ms. Yazdi executed a Confidentiality Agreement with ZBC. *See* ECF 56-5. Under that agreement, Ms. Yazdi acknowledged that she would have access to other types of confidential information of ZBC and Mr. Brown, defined as "Private Information," and she agreed to "hold all Private Information and issues of [Mr. Brown's and ZBC's] privacy in strict confidence and to take all steps and use such resources as are necessary to prevent disclosure, in any manner, of the Private Information." *Id.* at 1, § 1. "Private Information" is defined as "any information regarding [ZBC] and/or its affiliated entities . . . , their owners, members, employees, officers and

representatives . . . that is either non-public, confidential, private or proprietary in nature and not available to the general public." *Id.* at 1. Ms. Yazdi also agreed she would make no public comment "to reveal, divulge, disclose, suggest, discuss or confirm any facts or circumstances related to the Private Information." *Id.* ¶ 3.

Contrary to the arguments she now presses before this Court, Ms. Yazdi repeatedly acknowledged when signing the Confidentiality Agreement that these protections were legitimate, legally compliant, and enforceable. Ms. Yazdi, for example, "acknowledged that the Private Information and each Protected Party's privacy are special, unique and valuable assets of such Protected Party," *id.* ¶ 1, that "each Protected Party [wa]s using reasonable efforts to continuously control and keep confidential such Private Information," *id.*, and that "the restrictions contained in this Agreement are, in view of the nature of each Protected Party's desire for privacy, reasonable and necessary to protect legitimate proprietary and privacy interests," *id.* ¶ 4. Directly above her signature, Ms. Yazdi also agreed as follows:

> Both parties hereto acknowledge that they have received or had the opportunity to receive the advice of independent counsel to this Agreement regarding their rights and obligations regarding this Agreement. Based on such advice, the parties believe that all of the provisions of this Agreement are lawful and enforceable. However, the parties knowingly waive any and all possible claims that this Agreement is, for any reason, illegal or unenforceable, in whole or in part. The parties each forever shall be estopped form asserting any illegality or unenforceability as to any provision of this agreement.

*Id.* ¶ 10.

Ms. Yazdi, to be sure, was no novice at the time of executing these agreements. She had operated her own business for several years and was experienced negotiating contracts, including commercial contracts. SAF ¶ 19; Ex. 1 at 9:13–10:15, 11:13–12:16. She acknowledged that she would not sign an agreement if she had not read it and understood its terms. SAF ¶ 20; Ex. 1 at 13:19–14:1. Whether she would comply with such agreements, however, has proven to be another matter altogether.

After getting married in August 2023, Mr. Brown and Ms. Yazdi's relationship quickly deteriorated. In November 2023, Mr. Brown informed Ms. Yazdi in person that he wanted a divorce, and they publicly announced the divorce in December 2023. SAF ¶ 42; Ex. 3. at 98:13-21. On January 29, 2024, ZBC provided Ms. Yazdi official notification that her job would be terminated effective February 9, 2024. ECF 56-1 ¶ 16. Even before receiving that notice, however, Ms. Yazdi knew that soon she would be leaving the company. SAF ¶¶ 44; Ex. 4 ¶ 26. Indeed, on December 21, 2023, Ms. Yazdi sent an email to ZBC's CEO, Mark Kresser, concerning the transition of her job responsibilities, stating that she "will be leaving the company." SAF ¶ 45; Ex. 4 ¶ 26. During this period, Ms. Yazdi's counsel was negotiating the terms of her employment separation and divorce with ZBC and Mr. Brown's counsel. SAF ¶ 43; Ex. 4 ¶ 27. There is no doubt that, before January 13, 2024, Mr. Yazdi knew her employment with ZBC was ending imminently. SAF ¶¶ 43-45; Ex. 4 ¶ 44.

But before departing, Ms. Yazdi abused her continued access to confidential information as an employee of ZBC to further her own personal interests. Beginning on January 13, 2024, while still employed by ZBC, Ms. Yazdi covertly began stealing numerous emails and their attachments by forwarding them from her work email address to her personal email address. SAF ¶ 46; Ex. 4 ¶¶ 17-18; ECF 22-3; Ex. 1 at 136:3–137:7. Between January 13, 2024 and February 8, 2024, Ms. Yazdi diverted to her personal email account 173 emails and their attachments. *See id.* Although not every document she stole was confidential, numerous of these materials were. The documents Ms. Yazdi stole included, for example, highly sensitive valuations of ZBC assets, confidential contracts with third parties, salary information for fifty-six ZBC employees, and marketing plans for a yet-to-be announced, unreleased song Mr. Brown was working on with another high-profile artist. SAF ¶ 48; Ex. 4 ¶ 18.

There is no credible dispute that Ms. Yazdi violated her employment agreements with ZBC by stealing this information. Ms. Yazdi, in fact, admitted during her deposition that at least some of the documents she took were Confidential Information. SAF ¶ 50; Ex. 1 at 130:19-25, 133:20–134:14. She also admitted that she took information from ZBC for personal gain—*e.g.*, to use it against Mr. Brown in the divorce. SAF ¶ 51; Ex. 1 at 75:22–76:1; 82:6-12; 119:7-15, 138–140:23-11, 145:24–147:8.

## ARGUMENT

Unable to defend her conduct, Ms. Yazdi now asks this Court to give her a pass by holding that both her Employee Agreement and Confidentiality Agreement are unenforceable under the GRCA. *See* ECF 56 at 6 ("The analysis begins and ends with whether the underlying covenants are compliant with the GRCA . . . ."). The Court should deny Ms. Yazdi's motion because the agreements are enforceable and, even if they were not, the remedy would be to narrow them in accordance with Georgia law and the parties' express intentions, not to invalidate the agreements and thereby strip Plaintiffs of the protections they appropriately sought and to which Ms. Yazdi knowingly agreed. At a minimum, there are factual disputes that prevent the Court from granting summary judgment to Ms. Yazdi, particularly considering that the Court must resolve "[a]ll reasonable doubts" in Plaintiffs' favor. *BRP Colleague Inc. v. Gillen*, 2023 WL 3641954, at *2 (N.D. Ga. Mar. 7, 2023).

## I.   THE EMPLOYEE AGREEMENT COMPLIES WITH THE GRCA.

The Court's analysis at this stage need not look beyond the Employee Agreement. Ms. Yazdi does not seek summary judgment on the basis that she complied with that agreement. To the contrary, she admits that at least some of the information she took from ZBC was Confidential Information she was restricted from disclosing. *See* SAF ¶¶ 50-51; Ex. 1 at 28:5-11, 42:8-12, 75:22–76:1, 130:19-25, 133:20–134:14. Thus, if the Court concludes that the Employee Agreement is

enforceable, it need not consider anything further, as the Employee Agreement alone would provide a basis for Plaintiffs' claims and would stand irrespective of any finding as to the Confidentiality Agreement. The Employee Agreement is enforceable, and thus Ms. Yazdi's motion must be denied.

The GRCA defines "Confidential information" that may be properly restricted from disclosure as data and information "[r]elating to the business of the employer," that is "[d]isclosed to the employee or of which the employee became aware of as a consequence of the employee's relationship with the employer," that has "value to the employer," is "[n]ot generally known to competitors of the employer," and which may include certain categories of information. O.C.G.A. § 13-8-51(3). The GRCA further specifies that it authorizes employers to implement "reasonable protection to all legitimate business interests." O.C.G.A. § 13-8-54(a).

Ms. Yazdi argues that the Employee Agreement is unenforceable because its protections "prohibit 'the disclosure of information unrelated to the protection of Plaintiff[s]' legitimate business interests," ECF 56 at 10 (quoting *Mercer*, 2023 WL 2531727, at *5). She also seems to suggest, but does not clearly argue, that the Employee Agreement improperly extends to protect information "regardless of whether [she] learned it as an employee of ZBC." *Id.* at 1. The unambiguous language of the Employee Agreement, however, shows she is wrong in both respects.

By its plain terms, the Employee Agreement defines the "Confidential

Information" that is restricted from disclosure as "any and all data and information *relating to the business of Company and/or its affiliated entities* . . . that is disclosed to, developed by or *learned by you in the course of your employment* with Company *which has value to Company* and is *not generally known* to Company's competitors." ECF 56-6 § 3(b) (emphasis added). At each step, that is consistent with the GRCA. The Employee Agreement protects information "relating to the business of ZBC," that Ms. Yazdi learned "in the course of" her employment, has value to ZBC, and is not generally known by its competitors. *Id.* § 3(b).

For that reason alone, this case is unlike the *Mercer* case Ms. Yazdi relies upon throughout her motion. There, the court held the confidentiality provision at issue was unenforceable under the GRCA because it "prohibit[ed] the disclosure of information unrelated to the protection of Plaintiff's legitimate business interests." *Mercer*, 2023 WL 2531727, at *5. The Employee Agreement at issue here does no such thing. Its protections are expressly limited to information relating to ZBC's business that has value to ZBC and is not known by its competitors. ECF 56-6 § 3.

Ms. Yazdi arrives at her conclusion to the contrary only by misreading the Employee Agreement. She argues that the provision is too broad because it:

> extends to: (1) all information "relating to the business" of any of ZBC's affiliated entities and "any third parties with whom [ZBC] does business (including its clients and prospective clients)"; (2) information "regarding [ZBC]'s and its affiliated entities' owners, members, employees, officers and representatives, and its and their respective contractors, consultants, and advisors," and (3) "all"

13

> information regarding Zac Brown and any member of the Zac Brown Band and any person with any familiar connection to such person, irrespective of whether such information relates to ZBC's business.

ECF 56 at 11. But that is not what the agreement says.

Ms. Yazdi conveniently ignores the actual language of the agreement and merely highlights portions of the definition that cannot be read in isolation. The full relevant portion of the provision, again, defines "Confidential Information" as:

> [A]ny and all data and information relating to the business of Company and/or its affiliated entities, including data and information relating to any third parties with whom Company does business (including its clients and prospective clients), that is disclosed to, developed by or learned by you in the course of your employment with Company which has value to Company and is not generally known to Company's competitors . . . .

The language Ms. Yazdi relies upon—*i.e.*, "data and information relating to any third parties with whom Company does business (including its clients and prospective clients)"—is notably prefaced with the term "including," meaning it does not expand beyond the language that comes before it. In other words, information concerning ZBC's clients or third parties it does business with only fall within the definition if that information also "relat[es] to the business of Company and or its affiliated entities," is "disclosed to, developed by or learned by [Ms. Yazdi] in the course of [her] employment with Company," "has value to Company," and "is not generally known to Company's competitors." ECF 56-6 § 3(b).

To the extent that Ms. Yazdi complains that ZBC cannot protect confidential information of its affiliated entities, she cites no authority for that proposition, and

it would be absurd to conclude that the GRCA does not allow an employer to protect confidential information concerning the business of its subsidiaries or other affiliates. Such a conclusion cannot be reconciled with the GRCA's instruction to protect "all legitimate business interests." O.C.G.A. § 13-8-54(a). The business of an affiliated entity is still the business of the parent.

Continuing her misreading, Ms. Yazdi argues the Employee Agreement is too broad because the second sentence of the definition extends to "Company's and its affiliated entities' owners, members, employees, officers, and representatives," ECF 56 at 11. But the second sentence, again, is limited by the first. The second sentence says that "Confidential Information shall include all *such* data and information," where "such data and information" is plainly referring to the definition in the prior sentence—that is, "any and all data and information relating to the business of Company . . . learned by you in the court of your employment" that "has value to Company" and "is not generally known to Company's competitors." *Id.*

In short, Ms. Yazdi's motion as to the Employee Agreement relies on arguments that are contrary to the agreement's plain language. For that reason alone, the Court should reject Ms. Yazdi's motion, which, if granted, would violate the GRCA's principles. *See* O.C.G.A. § 13-8-50 ("The General Assembly finds that reasonable restrictive covenants contained in employment and commercial contracts serve the legitimate purpose of protecting legitimate business interests and creating

an environment that is favorable to attracting commercial enterprises to Georgia and keeping existing businesses within the state.").

## II.    THE CONFIDENTIALITY AGREEMENT ALSO COMPLIES WITH THE GRCA.

Given that the Employee Agreement is enforceable and that it alone would support Plaintiffs' claims, the Court need not—and should not—consider the enforceability of the parties' Confidentiality Agreement. Ms. Yazdi, to be sure, does not argue that the Confidentiality Agreement is necessary for Plaintiffs' claims. She does not, for instance, argue that the misappropriated documents are protected by the Confidentiality Agreement but not by the Employee Agreement. Therefore, the Court does not need to consider the Confidentiality Agreement to resolve Ms. Yazdi's motion. But even if the Court deems it appropriate to consider the Confidentiality Agreement, that agreement does not violate the GRCA.

Ms. Yazdi similarly argues that the Confidentiality Agreement is unenforceable because it purportedly "extends beyond information related to ZBC's business" to protect any non-public information concerning Mr. Brown, the Zac Brown Band, and their family members. *See* ECF 56 at 13. It is true that the definition of "Private Information" under the Confidentiality Agreement is broader than the definition of "Confidential Information" under the Employee Agreement. Private Information under the Confidentiality Agreement includes non-public information concerning the "private life or professional life" of Mr. Brown, his band

members, and their families. *See* ECF 56-5 at 1. That, however, does not mean that such information is unrelated to ZBC's business in violation of the GRCA.

To the contrary, the GRCA recognizes that the scope of protection afforded under a confidentiality provision is determined, in part, by the nature of "the business of the employer . . . in whose favor the restrictive covenant is given." O.C.G.A. § 13-8-56(3). Determining whether a confidentiality agreement "is attempting to protect confidential information relating to the business," *Mercer*, 2023 WL 2531727, at *5, thus requires evaluating the nature of the business at issue. While it may be unreasonable for some employers to restrict information concerning the personal life of their owners, that is not the case for ZBC.

ZBC is 100% owned by Mr. Brown and is the entity through which he conducts all of his business. *See* SAF ¶ 2; Ex. 4 ¶ 2. ZBC's business includes (i) exploiting the rights to music produced, and musical compositions written, by Mr. Brown and the Zac Brown Band; (ii) Mr. Brown's wine brand; (iii) Mr. Brown's merchandising business; (iv) the rights to work he creates as a producer and songwriter; (v) the rights to exploit his name, image, and likeness, as well as the trademarks and service marks of the Zac Brown Band; (vi) the Zac Brown Band's global live performance business, and (vii) various other related assets. SAF ¶ 3; Ex. 4 ¶ 3. As a celebrity, Mr. Brown's public image—and that of his band—is central to ZBC's legitimate business interests. SAF ¶ 6; Ex. 4 ¶ 5. Mr. Brown has worked

diligently throughout his longstanding career to keep his personal life and that of his family out of the public domain. SAF ¶¶ 7-9, 13; Ex. 4 ¶¶ 5-7. He intentionally does not publicly share his personal or political beliefs on various topics. SAF ¶ 8; Ex. 4 ¶ 6. As a performer, he wants fans of all walks of life to listen to his music for the music itself. SAF ¶ 9; Ex. 4 ¶ 6. He also is the founder, a spokesperson, and frequent camp counselor of Camp Southern Ground, a nonprofit organization in Peachtree City, Georgia, whose mission is to contribute to the development and well-being of children from all backgrounds, races, and religions with an emphasis on those with developmental issues, and to offer wellbeing programs to the nation's veterans. SAF ¶ 5; Ex. 4 ¶4.

In the context of ZBC's business and Mr. Brown's charitable endeavors, it is absolutely imperative that he and ZBC protect non-public information concerning Mr. Brown's personal and professional life. SAF ¶¶ 9-12; Ex. 4 ¶¶ 7-10. Indeed, a celebrity like Mr. Brown has a long-recognized, protectable business interest in his public image and persona. *See, e.g.*, *Kelly v. Primco Mgmt., Inc.*, 2015 WL 10990368, at *15. "Celebrities often invest years of effort in establishing their public personae, and without the right to control the use of their name and likeness, it is likely that their ability to exploit their investments will be irreparably harmed by exploitation of their names and likeness by others." *Id.* That is why courts have not hesitated to protect information concerning celebrities' private lives and public

image when confronted with similar circumstances. *See Paisley Park Enterprises, Inc. v. Boxill*, 253 F.Supp.3d 1037, 1050 (D. Minn. 2017) ("[D]isclosure of confidential information protected by the Confidentiality Agreement threatens to irreparably damage Plaintiffs' right to control Prince's confidential information, reputation and public persona . . . ."); *2Die4Kourt v. Hillair Cap. Mgmt., LLC*, 2016 WL 4487895, at *8 (C.D. Cal., 2016), *aff'd,* 692 F. App'x 366 (9th Cir. 2017) (recognizing that, like other celebrities, "the Kardashians have invested considerable efforts in establishing their public personae").

While Ms. Yazdi mocks the idea that information as seemingly innocuous as what Mr. Brown "eats for breakfast" could be protected as a legitimate business interest, ECF 56 at 11, she ignores that ZBC's business involves the public image of a celebrity. It is not hard to imagine how non-public information concerning Mr. Brown's personal preferences could impact, for instance, existing and potential branding and sponsorship endeavors for ZBC. It is likewise obvious that in today's highly politicized climate, disclosing other non-public information concerning Mr. Brown, such as his political or religious beliefs, would likely impact ZBC's business by driving away fans with beliefs differing from his music or other endeavors.

And this is not merely an issue for this case. A ruling in Ms. Yazdi's favor would mean that no employer in Georgia can restrict its employees from disclosing non-public information concerning the personal life of the employer or its public-

19

facing executives, the employer's owner, or anyone else. If non-public information concerning Mr. Brown is not a protectable business interest for ZBC, then it is hard to imagine how any celebrity (including a C-suite executive who has become a public figure) could prohibit his or her employees from disclosing information concerning that person's personal life or public image. That is not the public policy of this State, where the General Assembly has made clear that the GRCA should be applied in order to protect "all legitimate business interests." O.C.G.A. 13-8-54(a).

### III.    ALTERNATIVELY, THE COURT SHOULD BLUE PENCIL THE AGREEMENTS TO PROVIDE THE FULLEST PROTECTION PERMITTED UNDER THE GRCA.

If the Court were to conclude, contrary to the discussion above, that the confidentiality protections in Ms. Yazdi's Employee Agreement or Confidentiality Agreement go beyond what is permitted by the GRCA, the Court should not resort to the drastic remedy of deeming the agreements unenforceable. Rather, it should revise the provisions to provide the fullest protection permitted under Georgia law.

Ms. Yazdi acknowledges that courts can "modify" restrictive covenants "to achieve the original intent of the contracting parties," ECF 56 at 14, but she argues the Court cannot do so here because the parties did not intend as much. Her argument, however, mischaracterizes the relevant statutory framework and ignores the plain language of the parties' agreements.

As to the framework, while the GRCA's use of the term "may" indicates that a court has discretion as to whether it will blue pencil a restrictive covenant, that discretion must be exercised in accordance with the GRCA's other principles. *See Motorsports of Conyers, LLC v. Burbach*, 892 S.E.2d 719, 727 (Ga. 2023). "[T]he same statute that empowers a court to blue-pencil a restrictive covenant also ***requires*** a court to construe restrictive covenants 'to comport with the reasonable intent and expectations of the parties' and 'in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement.'" *Id.* Exercising discretion in accordance with the parties' intentions in this case would require blue penciling the agreements rather than deeming them unenforceable.

Where, as here, the parties' intent is reflected in the "clear and unambiguous" language of the contract, the court looks only to the contract to determine intent. *See Unified Gov't of Athens-Clarke Co. v. Stiles Apartments, Inc.*, 295 Ga. 829, 832 (2014); *accord Mariner Health Care Mgmt. Co. v. Sovereign Healthcare, LLC*, 306 Ga.App. 873, 876 (2010). The parties' intentions here could not have been clearer. They were expressed in the Employee Agreement, which states that:

> The covenants of this Agreement shall be severable and if any of them is held invalid because of its duration, scope of area or activity, or any other reason, ***the parties agree that such covenant shall be adjusted or modified to the extent necessary to cure that invalidity*** and the modified covenant shall thereafter be enforceable as if originally made in this Agreement.

ECF 56-6 § 10 (emphasis added).

The parties likewise acknowledged their intentions in the Confidentiality Agreement, expressing their belief "that all of the provisions of this Agreement are lawful and enforceable," agreeing that they each waived and would be estopped from arguing otherwise, and that "[i]f such provision could be more narrowly drawn so as not to be invalid or unenforceable, it shall . . . be so narrowly drawn without invalidating or affecting the remaining provisions of the Agreement." ECF 56-5 §§ 7, 10. Even if that provision does not bar Ms. Yazdi from taking the opposite position now (and it should), at a minimum it reflects that the parties intended these agreements to protect confidential information of ZBC and Mr. Brown to the fullest extent permitted by the law.

The Court should honor those intentions if it finds the confidentiality protections are too broad. *See e.g., Baldwin v. Express Oil Change*, 87 F.4th 1292, 1310 (11th Cir. 2023) (affirming the district court's decision to blue pencil under Georgia law in light of the parties' agreement and the right of "any court called upon to enforce this Agreement . . . to modify" the provisions). As to the Employee Agreement, while it is hard to envision any change necessary to make it comply with the GRCA, the Court could strike the "including" language in the first sentence in Section 3(b). As revised, that provision would state:

> The term "Confidential Information," as used in this Agreement, shall mean any and all data and information relating to the business of Company and/or its affiliated entities that is disclosed to, developed by or learned by you in the course of your employment

with Company which has value to Company and is not generally
known to Company's competitors.

The Court also could strike "and/or its affiliated entities" if it found that language
problematic and the provision would continue to support Plaintiffs' claims, as the
information Ms. Yazdi stole clearly related to ZBC's business. *See Refresco
Beverages US Inc. v. Califormulations, LLC*, 2021 WL 4316015, at *4 (M.D. Ga.
Sept. 22, 2021) (blue penciling confidentiality provision to limit protection to
business interests); *Pan Am Dental, Inc. v. Trammell*, 2020 WL 2531622, at *9 (S.D.
Ga. May 18, 2020) (blue penciling contract to narrow it to the established legitimate
business interests and denying summary judgment); *PointeNorth Ins. Grp. v. Zander*,
2011 WL 4601028, at *3 (N.D. Ga. Sept. 30, 2011) (similarly blue penciling
agreement).

As to the Confidentiality Agreement, the Court could revise the definition of
"Private Information" to limit that definition to such information that "[r]elat[es] to
the business of the employer," is "[d]isclosed to the employee or of which the
employee became aware of as a consequence of the employee's relationship with the
employer," has "value to the employer," and is "[n]ot generally known to
competitors of the employer." O.C.G.A. § 13-8-51(3). The provision would still
protect information concerning Mr. Brown, his band, and their family members in
accordance with the agreement's current definition; it merely also would include the
additional qualifiers specified in the GRCA.

To be clear, however, those changes are unnecessary to resolve this motion. With or without them, Plaintiffs still would have viable claims because the information Ms. Yazdi stole relates to ZBC's business, was learned during the course of her employment, has value to ZBC, and is not generally known to its competitors. *See* SAF ¶¶ 47-49; Ex. 4 ¶¶ 18-19. In other words, Ms. Yazdi is asking the Court to invalidate the agreements for a reason that is not relevant to the pending claims. There is no reason for the Court to reach this issue.

And although Plaintiffs submit that no revisions are necessary, these proposed changes certainly would reflect the parties' intentions more than throwing out the agreements entirely. Nothing in Ms. Yazdi's motion shows otherwise. She tries to convince the Court that the parties' intentions were inconsistent with Georgia law by quoting snippets of deposition testimony, ECF 56 at 15–16. But the Court cannot look beyond the plain language of the parties' agreements when their intentions are reflected therein. In any event, there is nothing inconsistent with that testimony and the parties' intent for the agreements to provide the fullest protection permitted under the law. For example, Mr. Kresser testifying that, "for [him]," any non-public information about Mr. Brown's life was to be protected, ECF 56 at 16, does not undermine the parties' express intentions to protect information concerning the legitimate business interests of ZBC as much as possible.

## IV.    THE MOTION SHOULD BE DENIED BECAUSE MS. YAZDI BREACHED INDEPENDENT AGREEMENT PROVISIONS.

Independent of everything above, Ms. Yazdi's motion should be denied because she breached other provisions of the Employee Agreement that do not depend on the scope of the confidentiality protections. In Section 3(c) of her Employee Agreement, Ms. Yazdi agreed she "shall at all times during [her] employment comply with all procedures and policies respecting Confidential Information that Company may promulgate from time to time." ECF 56-6 § 3(c). Additionally, in Section 9, she "agree[d] to comply with all policies and procedures concerning the security of Company's computer resources and systems that Company may issue from time to time." ECF 56-6 § 9.

The policies include the Employee Handbook, which prohibited Ms. Yazdi from sending work emails to her personal email account, from stealing information from ZBC, and required her to return all ZBC documents upon her separation. Ex. 5 §§ 1.3, 3.3. 3.9. She violated each of those policies and, by extension, her Employee Agreement. *See Mathews v. Clark Atlanta Univ., Inc.*, 2021 WL 4896330, at *10 (N.D. Ga. Feb. 23, 2021) (violation of Code of Conduct in handbook gave rise to breach of contract claim under Georgia law.).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's Motion for Summary Judgment.

Dated: January 22, 2025                    Respectfully submitted,


                                           */s/ David L. Balser*
                                           David L. Balser
                                           Georgia Bar No. 035835
                                           Brandon R. Keel
                                           Georgia Bar No. 300303
                                           Mandi Youngblood
                                           Georgia Bar No. 643117
                                           **KING & SPALDING LLP**
                                           1180 Peachtree Street
                                           Atlanta, Georgia 30309
                                           Tel: (404) 572-4600
                                           Fax: (404) 572-5100
                                           dbalser@kslaw.com
                                           bkeel@kslaw.com
                                           myoungblood@kslaw.com

                                           *Counsel for Plaintiffs Zachry*
                                           *Alexander Brown and Zac Brown*
                                           *Collective, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned certifies that this document has been prepared in Times New Roman 14-point font in accordance with Local Rule 5.1(B).

*/s/ David L. Balser*
David L. Balser
Georgia Bar No. 035835

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this day a copy of the foregoing

was filed with the Court's CM/ECF system, which will serve all counsel of record.

This 22nd day of January, 2025.

*/s/ David L. Balser*
David L. Balser
Georgia Bar No. 035835
