# Ex. 4 - Declaration of Mark Kresser

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ZACHRY ALEXANDER BROWN, and ZAC BROWN COLLECTIVE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> KELLY YAZDI, <br><br> Defendant. | Civil Action No. 1:24-CV-2203 |

## DECLARATION OF MARK KRESSER

I, Mark Kresser, hereby declare pursuant to 28 U.S.C. § 1746:

1. I am over the age of 18 and a resident of the State of Tennessee. The information set forth herein is true and correct based on my personal knowledge and a reasonable inquiry into company records of Zac Brown Collective, Inc. ("ZBC"). If asked to testify as to the matters set forth below, I could and would do so competently.

2. I am the Chief Executive Officer of ZBC, a company owned 100% by Zachry Alexander Brown ("Mr. Brown"). ZBC is an entertainment and lifestyle company of diverse business interests, including promoting and managing a number of distinctive brands ranging from musical entities, including the Zac Brown Band, food, filmmaking, fashion and apparel, custom design, and outdoor gear. Through my role as Chief Executive Officer, I am knowledgeable about the nature of ZBC's

1

business, including its commercially sensitive information and dealings with third parties.

3. Mr. Brown conducts virtually all of his business through ZBC. Among other things, ZBC owns (i) the exploiting rights to music produced, and musical compositions written, by Mr. Brown and the Zac Brown Band; (ii) Mr. Brown's wine brand; (iii) Mr. Brown's merchandising business; (iv) the rights to work Mr. Brown creates as a producer and songwriter; (v) the rights to exploit his name, image, and likeness, as well as the trademarks and service marks of the Zac Brown Band; (vi) the Zac Brown Band's global live performance business, and (vii) various other related assets.

4. Mr. Brown is also the founder, a spokesperson, and frequent camp counselor of Camp Southern Ground, a 501(c)(3) nonprofit organization in Peachtree City, Georgia whose mission is to contribute to the development and well-being of children from all backgrounds, races, and religions with an emphasis of those with developmental issues, and to offer wellbeing programs to the nation's veterans.

5. Mr. Brown's public image and the public image of his band are central to—and among the most important business interests of—ZBC. Mr. Brown and ZBC have, accordingly, worked extensively to protect Mr. Brown's and his band's public image as important, and legitimate, business interests of ZBC.

6. That includes Mr. Brown working diligently throughout his

longstanding career to keep his personal life and that of his family out of the public domain and intentionally choosing not to publicly share his personal or political beliefs on various topics so that fans listen to his music for the music itself, not the personal beliefs of himself or his bandmates.

7. Given his position as a celebrity and the central figure in all that ZBC does, it is important to ZBC's and Mr. Brown's business to protect non-public information concerning ZBC, Mr. Brown, his family, and his band.

8. The unauthorized disclosure of such non-public information could have serious negative impacts on Mr. Brown's and ZBC's business.

9. Even the unauthorized disclosure of non-public information that may otherwise seem mundane could have serious negative impacts on ZBC's and Mr. Brown's business given his unique role as a celebrity and public figure.

10. The unauthorized disclosure of non-public information concerning Mr. Brown could impact sponsorship or endorsement opportunities, lead to unwanted media attention, or have any number of other potential negative impacts on ZBC's and Mr. Brown's businesses.

11. Mr. Brown and ZBC have thus worked diligently to protect sensitive non-public information concerning their businesses, Mr. Brown's public image, his family, and his band.

12. Among those protections, ZBC employees who may have access to sensitive non-public information concerning Mr. Brown or ZBC are required to enter

into an Employee Agreement and Confidentiality Agreement that contain provisions to protect confidential non-public information.

13. The Employee Agreement restricts the use and disclosure of "Confidential Information," as defined therein, whereas the "Confidentiality Agreement" restricts the use and disclosure of "Private Information," as defined in that agreement.

14. Both agreements are intended to protect ZBC's legitimate business interests, which include protecting non-public information concerning ZBC, Mr. Brown, Mr. Brown's family, and the Zac Brown Band that, if disclosed without authorization, could negatively impact ZBC's business.

15. In furtherance of these legitimate business interests, Defendant Kelly Yazdi (like other ZBC employees) entered into an Employee Agreement and a Confidentiality Agreement with ZBC when she became an employee, both dated August 24, 2022.

16. ZBC required Ms. Yazdi to enter into these agreements to, among other things, protect ZBC's legitimate business interests by prohibiting Ms. Yazdi from using or disclosing "Confidential Information" or "Private Information" except as permitted by her respective agreements.

17. In connection with this matter, on June 5, 2024, I reviewed certain emails that Ms. Yazdi sent from her work email address at ZBC ▮▮▮▮▮▮▮▮▮▮ to her personal email address ▮▮▮▮▮▮▮▮▮▮

between January 13, 2024 and February 8, 2024, prior to the effective date of her termination on February 9, 2024.

18. The documents that Ms. Yazdi sent to her personal email address during this period include information that is sensitive, confidential, and proprietary to ZBC and Mr. Brown. That information includes the following:

   a. A confidential copy of a contract between a broker and one of ZBC's affiliates relating to a non-public agreement with a music venue for a restaurant partnership. This contract included proprietary information about a ZBC affiliate's business prospects.

   b. A confidential concert venue tech package that includes highly sensitive documents showing the inner workings of the concert venue and accompanying show production. These materials were provided to ZBC under the terms of a strict non-disclosure agreement and described private business information about the concert venue. As a result, the information was confidential.

   c. A confidential valuation of, and financial projections for, Mr. Brown's most significant asset: his music catalog. This highly sensitive document includes projected values through 2056. This valuation was confidential because it related to the financial success of Mr. Brown's music, the heart of his brand.

5

d. The confidential financial terms of an October 23, 2024 Zac Brown Band concert, including earnings and deductions. This information was confidential because it itemized the Zac Brown Band's earnings from this concert.

e. A confidential investment proposal for Mr. Brown from a biotechnical company that includes the biotechnical company's global marketing plan and financial forecasting. This information was confidential because it described a highly sensitive investment proposal unique to Mr. Brown.

f. A confidential endorsement offer from another third party, which includes the proposed financial terms of the third party's offer. This offer was confidential because it described a highly sensitive business deal offered to Mr. Brown.

g. Confidential salary information for fifty-six ZBC employees. Salary information is highly confidential at ZBC. In general, ZBC never discloses this information externally and only discloses this information internally when strictly necessary.

h. A confidential presentation regarding Mr. Brown's wine company, which includes detailed internal valuations, internal sales data and projections, and materials created in anticipation of a potential sale. This presentation was confidential because it included estimates of the

      value of the wine company and proprietary business details regarding a possible sale of it.

i. A confidential and yet-to-be-announced collaboration and marketing plan with another artist for an unreleased song, including launch dates and plans. This information was confidential because Mr. Brown maintains in strict confidence the details regarding any unreleased songs. Mr. Brown and his companies strategize every step of the song-release process. Keeping information about unreleased songs confidential is of paramount importance when executing against that strategy.

j. Confidential internal passwords relating to an American Express account; security gate passwords and gate codes for a ZBC affiliate; passwords for a tour scheduling application, access to the ZBC company private jet, and the ZBC corporate headquarters video system. These passwords were confidential because they related to the finances, private land, business prospects, private personal property, travel, and security of Mr. Brown, ZBC, and ZBC affiliates.

k. Confidential social media passwords for over 25 different ZBC accounts. These passwords were confidential because ZBC allows very few individuals to control its social media accounts, which are an important marketing tool for ZBC.

l. Confidential Zac Brown Band ticket sales data, including dates and times of private events not known or available to the public. This information was confidential because it related to the finances of the Zac Brown Band's business ventures.

m. A confidential contract between a ZBC affiliate and an artist for artwork to be used as set pieces, backdrops, and potentially new merchandise for the Zac Brown Band's 2025 tour. This contract was confidential because it related to the company's business prospects and private details of an upcoming tour.

n. A confidential copy of the ZBC employee handbook that contains internal company policies, including policies regarding compensation, recruitment, social media, and document retention. ZBC kept its internal business operations strictly confidential, as evidenced by the employee handbook's prohibition on disclosure of confidential business information.

o. A confidential presentation concerning an undisclosed energy investment opportunity presented to Mr. Brown and ZBC, which includes non-public financial information regarding the endeavor and ZBC's internal evaluation of the opportunity. This presentation was confidential because it described a highly sensitive investment opportunity unique to Mr. Brown.

    p.   A confidential "Statement of Work" from ZBC's IT and cybersecurity contractor outlining its proposal to remediate and upgrade ZBC's technological infrastructure, which includes sensitive analysis of ZBC's internal IT systems. This information was confidential because it related to the security of ZBC's IT systems.

    q.   Confidential analysis provided to ZBC from a third-party digital consultant containing metrics concerning the Zac Brown Band's social media accounts. This analysis was confidential because it evaluated the Zac Brown Band's social media accounts, which were key aspects of its marketing efforts.

    r.   A confidential communication regarding the proposed contractual terms of Mr. Brown's collaboration with a retailing company, including royalties, projected revenue earnings, and communications amongst the parties' counsel. This communication was confidential because it described an investment opportunity unique to Mr. Brown.

    s.   Confidential communications and financial projections regarding the potential trademark sale of Mr. Brown's wine brand. This information was confidential because it related to the business prospects of the wine brand.

    t.   A confidential presentation from Mr. Brown's appraisal consultants depicting past, actual, and future projected revenues for Mr. Brown's

wine brand, including specific sales data for various products and a detailed valuation of the brand's competitors. This presentation was confidential because it related to the business prospects of the wine brand.

u.  A confidential report containing merchandise sales for the Zac Brown Band, including exact SKU sales per unit as well as revenue figures for specific concert dates. This report was confidential because it detailed the financial successes of the Zac Brown Band's merchandising ventures.

v.  A confidential contract between ZBC and an outside vendor related to ZBC's engagement of a travel partner. This information was confidential because it disclosed the private terms of ZBC's business dealings.

19.  The stolen confidential information in each of the documents mentioned above relates to ZBC's business, was received by Ms. Yazdi in the course of her employment with ZBC, has value to ZBC, and is not publicly available or generally known to ZBC's competitors.

20.  A significant number of these documents contained highly sensitive non-public information concerning ZBC's business. Ms. Yazdi lacked authorization to take or to send these documents to her personal email address.

21. I first became aware that Ms. Yazdi forwarded these confidential documents to her personal email address on June 5, 2024, when I was reviewing her work email account in connection with this matter.

22. I understand that Ms. Yazdi has argued in her Brief in Support of her Motion for Summary Judgment ("Motion"), ECF 56, that I authorized her to send personal information to her personal email address in the lead up to her termination. I, however, never authorized Ms. Yazdi to send to her personal email address the confidential information discussed above concerning ZBC's and Mr. Brown's business. Nor did anyone else at ZBC provide her authorization to do so.

23. Ms. Yazdi forwarded the above-described materials without ZBC's or Mr. Brown's authorization, in violation of her Employee Agreement, Confidentiality Agreement, and Employee Handbook.

24. Ms. Yazdi was familiar with the terms of the Employee Agreement, Confidentiality Agreement, and Employee Handbook. She knew the types of confidential information that they protected and that forwarding the above-described confidential information to her personal email address was prohibited.

25. I understand that Ms. Yazdi has argued that she was forced to violate the terms of the Employee Agreement, Confidentiality Agreement, and Employee Handbook because she did not receive a work computer from ZBC, was not issued a work email for some time, and ZBC employees routinely sent emails to her personal email address. This is a misrepresentation of the facts. Ms. Yazdi was given

11

access to a ZBC desktop computer and did not receive a laptop because she preferred to use her own. Ms. Yazdi also was provided a work email address at ZBC after she began working for the company, and well before she forwarded the confidential information described above to herself. And while ZBC employees may have used their personal email address on isolated occasions, this was not a routine practice. ZBC certainly did not authorize employees to send business information to their personal email addresses, which was expressly prohibited in the Employee Handbook.

26. I also understand Ms. Yazdi has testified that she was unaware that she would be leaving ZBC until she received her termination letter on January 29, 2024. That is false. In November 2023, Mr. Brown informed Ms. Yazdi in person that he wanted a divorce. Prior to January 29, 2024, Ms. Yazdi had stopped actively working, had implemented an out-of-office email, and had begun transferring her work responsibilities to other ZBC employees, even expressly acknowledging that she would be leaving ZBC in an email to me on December 21, 2023.

27. Indeed, prior to receiving the January 29, 2024 letter, Ms. Yazdi's counsel was already engaged in negotiations with ZBC's and Mr. Brown's counsel concerning the terms of her separation and divorce.

28. By the time Ms. Yazdi sent the emails discussed above to her personal email address, she was well aware that she soon would be leaving the company.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 22, 2025.

/s/ Mark Kresser

Mark Kresser