# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

ZACHARY ALEXANDER BROWN,
and ZAC BROWN COLLECTIVE,
INC.,

     Plaintiffs,

v.

KELLY YAZDI,

     Defendant.

CIVIL ACTION FILE

NO. 1:24-CV-2203-WMR

## DEFENDANT'S MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, TO MODIFY OR STAY THE PERMANENT INJUNCTION PENDING APPEAL

Defendant Kelly Yazdi ("Ms. Yazdi") respectfully moves for clarification of the injunction issued pursuant to this Court's final order and judgment (the "Injunction" in the "Final Order") [Doc. 134]—or, in the alternative, to modify or stay the injunction pending appeal. *See* Fed. R. Civ. P. 62(d). Specifically, Ms. Yazdi seeks to clarify the meaning of three phrases—(1) "confidential information;" (2) "using;" and (3) "disclosing"—as used in the injunction.  If this Court denies the requested clarification as inconsistent with the Court's intent in entering the injunction, Ms. Yazdi respectfully requests that the Court modify the injunction to that same effect. And, failing that, she respectfully requests a partial stay of the Injunction until an appeal of her case can be resolved by the United States Court of Appeals for the Eleventh Circuit.

## **INTRODUCTION**

The Injunction issued in this case requires Ms. Yazdi to return "all Confidential Information in her possession, custody, or control," and to "refrain from using or further disclosing any of ZBC's Confidential Information." [Doc. 134 at 41]. In many cases, this is an easy command to satisfy. This is not one of those cases, and recent communications between the Parties' counsel demonstrates why.

At the outset, Ms. Yazdi requests relief because she wants to comply with the Injunction; indeed, she believes she already has. The problem is not her will. The issue here is that the business and personal relationships between Ms. Yazdi and Mr. Brown leave her (and her counsel) unable to discern what information is subject to the Injunction and what information is not. Whatever the Employment Agreement is, it is not a post-marital non-disclosure agreement.

The Final Order expressly recognizes the Parties' challenge on this point: "Ms. Yazdi's role as Mr. Brown's fiancée (and later spouse) might be relevant to *whether the information at issue is* "*Confidential Information*" under the terms of the Employee Agreement (*i.e.*, whether she obtained the information in the course of her employment or solely in her role as Mr. Brown's spouse)." [Doc. 134 at 23 (emphasis added)].

The issue is also live, as recent communications between the Parties' legal

counsel shows there is a disagreement about "what the district court mean[t] to prohibit." *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1412 (11th Cir. 1998) (vacating preliminary injunction as overly broad and vague).

For these reasons, Ms. Yazdi's motion asks this Court to clarify the Injunction in one of several ways. First, the Court could clarify that the scope of the Injunction is limited to "the Confidential Information she took from ZBC," which she has already returned or double deleted. [Doc. 134 at 32]. Short of this, the Court could clarify the Injunction by more specifically defining the "*types* of information … to which [the Injunction] applies." *Am. Red Cross*, 143 F.3d at 1412 (emphasis in original). Last, the Court could identify at least factors the Parties must utilize to determine whether a document contains confidential information.

As with most other cases, the context giving rise to Ms. Yazdi's motion matters. The Parties agreed to a third-party forensic review of Ms. Yazdi's devices and accounts, including her private email account. [Tr. Vol. 3B, at 829:23-25, 830:1-6; Tr. Vol. 4A, at 909:1-11]. Consequently, Plaintiffs not only have an ability to identify the universe of documents available, to the extent that they disagree with Ms. Yazdi's compliance, all they have to do is identify the document they want returned or destroyed.

In addition, the potential costs of the uncertainty Ms. Yazdi faces are

extraordinary.  A genuine disagreement between the parties about the meaning of the Final Order could lead to expensive proceedings before this Court and possibly saddle Ms. Yazdi with a massive award of attorneys' fees given the seven attorneys that currently represent the Plaintiffs.  Indeed, the costs associated with defeating even an unmeritorious argument could be astronomical.

As things stand today, Ms. Yazdi's counsel explained to Plaintiffs' counsel that she "deleted the emails she forwarded from her @zacbrown.com email account."  *See* **Exhibit A.** Plaintiffs contend she must do more, but they speak in only conclusory terms, which demonstrates that, at best, only a faint and blurry line separates "confidential information" that could be properly subject to the Injunction and other kinds of information that Ms. Yazdi learned about Mr. Brown as his spouse or through her prior and post-employment experiences.  Put simply, Ms. Yazdi is uncertain as to what the *information* subject to the Injunction is, as well as the limitations it imposes on her *conduct*.  As this Court recognized, history provides her with no security.  The Parties have "not always act[ing] appropriately toward the other," and their relationship remains in a "bad state."  [Doc. 134 at 4].

Clarifying the Injunction will go far in reducing the time and expense needed to understand what constitutes compliance, which also minimizes the Court's need to resolve issues.  If the Court disagrees, Ms. Yazdi requests that it modify the injunction to "describe in reasonable detail—and not by referring to the

complaint or other document—the act or acts restrained or required."  Fed. R. Civ.
P. 65(d)(1)(C).  If the Court decides not to clarify or modify the Injunction, Ms.
Yazdi asks that the Court issue a stay of the Injunction until her appeal can be
decided.

## STANDARD OF REVIEW

The primary relief Ms. Yazdi seeks is a clarification of the Injunction, and
this Court has discretion to grant or deny such a request.  *CBS Broadcasting Inc. v.
EchoStar Communications Corp*., 532 F.3d 1294, 1299 (11th Cir. 2008). "The
general purpose of a motion for clarification is to explain or clarify something
ambiguous or vague, not to alter or amend." *United States v. Philip Morris USA
Inc*., 682 F. Supp. 3d 32, 45 (D.D.C. 2023) (internal citation omitted). And because
a motion for clarification seeks to further state and not change the substance of an
order, "the burdens associated with a motion for reconsideration under Rules 59 or
60 are not applicable." *Kuber v. Berkshire Life Ins. Co*, No. 19-cv-80211 2020 WL
650782 at *1 (S.D. Fla. Jan. 27, 2020).

Motions for modification of a permanent injunction are different.  Orders
modifying judgments do not just clarify what the court meant; they "change[] the
legal relationship of the parties." *Mamma Mia's Trattoria, Inc. v. Original
Brooklyn Water Bagel Co., Inc*., 768 F.3d 1320, 1327 (2014) (quotation omitted)).
This is a "functional" question, that focuses on the effect of the modification.  *Id.*

(quotation omitted).[1]

Finally, motions to stay an injunction pending appeal are considered under essentially the same factors as a motion for an injunction in the first place. *See Pine Ridge Recycling, Inc. v. Butts County,* 874 F. Supp. 1383, 1386 (M.D. Ga. 1995).

Any of these three types of relief—clarification, modification, or stay—may be granted after the filing of a notice of appeal.  Fed. R. Civ. P. 62(d) ("while an appeal is pending from a[ ] . . . final judgment that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights").

## **GROUNDS FOR RELIEF**

The relief Ms. Yazdi seeks is reasonable, warranted, and supported by binding precedent.  Whether considered under the lens of clarification, modification, or stay, Ms. Yazdi simply seeks to "know precisely what the court intends to forbid."  *Am. Red Cross*, 143 F.3d at 1411.  Her position is wholly consistent with federal law.

---

[1] The distinction between clarification and modification matters mainly because orders that merely clarify an injunction are generally not appealable, while orders that modify an injunction are appealable under 28 U.S.C. § 1292(a)(1). *Mamma Mia's*, 768 F.3d at 1326.

Based on Rule 65(d)(1)(C), all injunctions must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." In the Eleventh Circuit, this means that "'an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed.'" *Am. Red Cross*, 143 F.3d at 1411 (citing *Hughey v. JMS Dev.*, 78 F.3d 1523, 1531 (11th Cir. 1996)). The Injunction here does not itself define "Confidential Information." [Doc. 134 at 41]. Instead, it refers to the Employee Agreement, as modified through the Court's blue-penciling at summary judgment. [*Id.* at 22-23].

Like this case, *American Red Cross* involved an injunction in a dispute about trade secrets. 143 F.3d at 1411-12. Like this case, the injunction in *American Red Cross* restrained the defendant from possessing or using trade secret (e.g., confidential) information of the plaintiff, specifically "(a) possessing, copying, or making unauthorized use of Plaintiff's [donor] lists *or any other documents that contain trade secrets* that are the proprietary property of the Plaintiff; … (c) engaging in any other activity constituting a misappropriation of the Plaintiff's lists, or in any way *adversely affecting* Plaintiff's reputation or good will." *Id.* at 1409 (emphasis added).

The Eleventh Circuit held such broad language "contravene[d] Rule 65(b)" for two certain reasons and a third possible one. *Am. Red Cross*, 143 F.3d at 1411.

First, the district court's order swept in information obtained lawfully as well as information gained through allegedly improper means. *Id.* at 1412. Second, the preliminary injunction left the defendant without a basis to determine what the plaintiff thought the "injunction might protect." *Id.* Finally, the court expressed concern about, but expressly reserved ruling on, the section of the preliminary injunction that banned the defendant "from 'in any way adversely affecting [the plaintiff's] reputation or goodwill may constitute an impermissible prior restraint on [the defendant's] legitimate competitive speech." *Id.* at 1411 n.5. In sum, the *American Red Cross* injunction was both ambiguous and deficient in structure, which impermissibly left the defendant "without reasonable notice of what the court means to prohibit." *Id.* at 1412.

The Injunction here shares some aspects with the one in *American Red Cross*. It does not identify documents that fall within its sweep, nor does it provide guidance to the parties about what "*types* of information" are Confidential Information, particularly in the light of the unique circumstances presented by this case. 143 F.3d at 1412; *see also* [Doc. 134 at 23]. This leaves Ms. Yazdi "understandably uncertain" about which documents are subject to the Injunction, and she is not required to just blindly accept the Plaintiffs' interpretation. *Am. Red Cross*, 143 F.3d at 1412. Her uncertainty also extends to her future conduct. Because the Parties already disagree about what information is subject to the

Injunction, it is virtually assured that they will not agree about what types of conduct the Final Order "means to prohibit." *Id.* At the very least, clarification is warranted, and if not, an order modifying or staying the Injunction is appropriate.

1. **The Phrase "Confidential Information" Should Be Clarified.**

The Final Order describes the issue before the Court as whether Ms. Yazdi breached her Employment Agreement, and if so, whether the Plaintiffs would be entitled to an injunction. [Doc. 134 at 4]. The Court answered both questions in the affirmative, and the Injunction requires Ms. Yazdi to return and then neither use nor disclose ZBC's "Confidential Information." [*Id.* at 41]. Ms. Yazdi believes she has complied with her obligations, because she has destroyed those emails that were once in her possession from persons with a ZBC email address. As such, she is no longer in "possession, custody, or control" of the documents considered at trial, and acting through counsel, Ms. Yazdi informed ZBC of her compliance. [Doc. 134 at 41]. If the Court agrees that this is what the Injunction intended, Ms. Yazdi requests that the Injunction be clarified to state this specifically. Alternatively, Ms. Yazdi asks this Court to provide guidance as to how she should discern whether information she received is subject to the Injunction or outside its scope.

The Injunction should be read as Ms. Yazdi does. The "Confidential Information" identified by the Plaintiffs at trial was a total of about 29 emails Ms.

Yazdi forwarded herself. [Tr. Vol. 3B, at 829:23-25, 830:1-4; Tr. Vol. 4A, at 909:4-11]. Ms. Yazdi fully acknowledges that these emails are subject to the Final Order and she has already communicated to Plaintiffs' counsel that she "deleted the emails she forwarded from her @zacbrown.com email account to her @gmail.com account." Ex. A. For that matter, and despite Plaintiffs' decision not to present evidence of other emails at trial, Ms. Yazdi has deleted all but about four of the 174 emails she sent from her "@zacbrown" email account to her personal "@gmail" email account. [Doc. 22 at ¶¶ 29-34, 53-63].[2]

The Plaintiffs read the Injunction more broadly, but they offer Ms. Yazdi no guidelines or means to determine what they consider to be subject to the Injunction. Instead, in an email dated January 15, 2026, Plaintiffs' counsel just recited the terms of the Injunction and asserted that the Injunction also requires her to return "any documents in her possession concerning ZBC's business that [she] obtained in the course of her employment [and] are not generally known to competitors and have value to the company." Ex. A. Plaintiffs offered no factors to be considered, no search terms, and despite possessing the forensic review, no specific information they believe meets these vague terms made murkier by the

---

[2] The exceptions are for a contract she entered before meeting Mr. Brown, and personal financial information regarding her 401k, pay and benefits schedule, and 2023 tax returns. [*See* Ex. D8; Tr. Vol. 3B, at 807:3-15 (401k); Ex. P133 (personal pay schedule); Ex. D19; Tr. Vol. 3B, at 812:1-10 (2023 tax return)].

Ms. Yazdi's and Mr. Brown's personal relationship.[3]

Ms. Yazdi respectfully submits that her interpretation of the Injunction is the right one, and it is the only one that harmonizes the Final Order with the Summary Judgment Order. Plaintiffs clearly disagree. Both Parties can cite portions of the Summary Judgment Order and the Injunction to support their position, which weighs strongly in favor of clarifying the Injunction to prevent further disputes.[4]

Ms. Yazdi's interpretation is consistent with the Injunction *and* the

---

[3] If Plaintiffs are dissatisfied with Ms. Yazdi's compliance, she would welcome them to identify which specific documents they contend are subject to the Injunction. She would then respond accordingly. It appears, however, that they are attempting to set her up for contempt (and fees) by unnecessarily hiding the ball when that ball is in their court.

[4] For example, while the bulk of the Final Order is addressed to confidential business and financial documents, the order also alludes to possible harm "to Mr. Brown's . . . reputation[]," [Doc. 134 at 32] which potentially implicates categories of otherwise-private information that has nothing to do with the business or finances of ZBC. [*See also id.* at 35 ("Plaintiffs . . . have a reasonable fear that Ms. Yazdi will disclose Confidential Information" based on the fact that "Ms. Yazdi continues to post negative information about Mr. Brown on social media," which "generate[s] significant traffic to her profile" and monetary benefit).]

Along the same lines, the Final Order appears to treat "Ms. Yazdi['s] use [of] confidential marketing information to coordinate the timing of her butterfly-themed social media posts about Mr. Brown" as Confidential Information in more than one respect. [*Id.* at 35.] Depending on how it is construed, the "confidential . . . information" in that situation could refer to (1) the actual documents reflecting the timing of promotional efforts for Mr. Brown's release of the "Butterfly" song; (2) the underlying knowledge of the timing of such promotional efforts, with or without corresponding documents; or even (3) the knowledge of the "Butterfly" song itself, even without revealing the fact of the song's release, Mr. Brown's collaboration with Dolly Parton, or the timing of any marketing efforts.

Summary Judgment Order.  In the latter, this Court held that the confidentiality provision in the Employment Agreement was "vague and overbroad," but could be blue-penciled.  [Doc. 101 at 16].  The Summary Judgment Order also decided that nearly identical language in the Confidentiality Agreement was facially invalid and could not be judicially modified.  [*Id.* at 19-20].  When addressing both agreements, the Court recognized that ZBC could not lawfully "designate all information of its affiliates and their 'contractors, consultants, and advisors" as confidential."  [*Id.* at 16].  Nor could ZBC impose a total embargo on "information concerning personal, cordial and commonplace conversations with virtually anyone, *irrespective* of whether such information relates to ZBC's business or was learned by Ms. Yazdi" through her employment.  [*Id.*]  Obviously, this means some information Ms. Yazdi acquired could relate to ZBC's business but still not be "Confidential Information."

The Final Order leaves these holdings intact.  One the one hand, it describes the "confidential information at issue" after describing the kind of specific and readily identifiable financial or strategic business decision contained in several of the emails Ms. Yazdi forwarded herself.  [Doc. 134 at 13-16, 23].  This includes: valuations, financial projections, past and projected revenues, salary information, payments to vendors, technical data about venues, potential "collaborations, tour sponsorship, and endorsement deals," a contract, merchandise, financial

statements, music agreements, social media strategies and statistics, club

membership strategies, a branding presentation, job transitions, and possible

sponsorship opportunities.  [*Id.*]  The Final Order reiterated its focus on the

documents in evidence when addressing irreparable harm, stating that the potential

use or disclosure "of any of the Confidential Information [Ms. Yazdi] *took from

ZBC*" may cause Plaintiffs to experience "loss of goodwill and business

opportunities . . . and harm to Plaintiffs' business dealings and relationships with

third parties which would place them at a serious economic disadvantage for future

dealings[.]."  [*Id.* at 32 (emphasis added)].

      Ms. Yazdi's understanding of the Injunction's scope is also consistent with

the part of the Final Order that Plaintiffs' rights are limited to protecting the

confidentiality of "their business-related information [gained by Ms. Yazdi] by

virtue of the Employment Agreement." [*Id.* at 30].  In other words, the Injunction

is not what Mr. Brown repeatedly sought and failed to obtain from Ms. Yazdi: a

post-nuptial non-disclosure agreement.  [Tr. Vol. 3B, at 796:2-13; 797:1-10; Tr.

Vol. 2B, at 441:2-3].  Taken together, a proper reading of the Injunction limits the

relevant "Confidential Information" to those documents Ms. Yazdi forwarded

herself *and* that she gained through her employment and not her status as Mr.

Brown's former spouse.

      The Final Order acknowledges the difficulty in trying to read (or enforce)

the Injunction differently and beyond the documents she acknowledged she "took

from ZBC." [Doc. 134 at 32]. It held that that the capacity in which she sent or

received ZBC's business information matters: "Ms. Yazdi's role as Mr. Brown's

fiancée (and later spouse) might be relevant to whether the information at issue is

"Confidential Information" under the terms of the Employee Agreement (*i.e.*,

whether obtained in the course of her information or solely in her role as Mr.

Brown's spouse)." [*Id.* at 23].

Plaintiffs disagree, but they have not provided Ms. Yazdi with neither the

specific information they believe is subject to the Injunction or even factors that

she and her counsel could consider when making their own determination of

responsiveness. For all Ms. Yazdi knows, Plaintiffs may contend that any

statement or information that portrays Mr. Brown negatively is "Confidential

Information," despite this Court's rejection of that argument at summary judgment.

[Doc. 101 at 19-20].

That said, the Injunction is sufficiently ambiguous that portions of the Final

Order, read in isolation, leave Ms. Yazdi uncertain about her obligations. One part

cites Ms. Yazdi's "posts about Mr. Brown and this litigation" as justifying

Plaintiffs' speculations that Ms. Yazdi will "disclose Confidential Information

moving forward." [Doc. 134 at 35]. Another describes Ms. Yazdi as "utiliz[ing]

her social media skills to eviscerate Mr. Brown, sometimes in relation to this

lawsuit, but not always.  A prime example of that is a post which mocks the recent engagement of Mr. Brown to another."  [*Id.* at 4].  But of course, statements about the litigation do not (in and of themselves) disclose legitimate "business-related" information of ZBC that Ms. Yazdi obtained during and in the scope of her employment—since Ms. Yazdi was not employed by ZBC at the time of the litigation or when Mr. Brown became engaged again.

If the Court clarifies the Injunction as suggested below by explaining that only the specific and easily identifiable documents containing "business-related" information" are "Confidential Information" subject to the Final Order, mere clarification of the injunction, rather than modification, will suffice.[5]  Importantly, clarifying the Injunction could greatly minimize existing ambiguities that may lead to costly litigation before this Court and an unnecessary drain on judicial resources as well as Ms. Yazdi's.  Such needless disputes are reasonably foreseeable in the context of Ms. Yazdi's obligation to return "all Confidential Information," and to refrain from "using or further disclosing" ZBC's Confidential Information.  [Doc. 134 at 41].

Returning "all Confidential Information."  The first bullet point in the

---

[5] This limitation also comports with the Court's finding that the disclosure of financial and business strategies could impair ZBC's business by "diminish[ing] ZBC's negotiating power … revealing the value of Mr. Brown's endorsements, [and] revenue splits with venues" among other contracts.  [Doc. 134 at 17].

Injunction requires Ms. Yazdi to return "to ZBC all Confidential Information in her possession, custody, or control within seven (7) days."  [Doc. 134 at 41]. Compliance is not as simple as it seems, because the Final Order does not explicitly identify a bright line Ms. Yazdi can use to distinguish Confidential Information from unprotected information, and the distinctions are not always apparent from the face of the document.[6]

Other evidence at trial buttresses this conclusion.  Like many other ZBC employees, Ms. Yazdi sent and received ZBC business-related information on her personal and business email accounts.  [*See e.g.*, Tr. Vol. 2B, at 200:2-12].  As if that were not enough, Ms. Yazdi also received communications containing business-related information but in her unique status as Mr. Brown's fiancée and wife and not in the course of her employment.  [Tr. Vol. 1B, at 173:9-25, 174:11-20].  Returning the 29 emails Plaintiffs introduced into evidence complies with the Injunction, and Ms. Yazdi has deleted all but a few emails (addressed below).  This should be all that is necessary.

The only thing that conceivably remains is for Ms. Yazdi to go through all of her emails, without search terms, and without any guiding principles to determine whether she believes she received the information outside of her role as employee.

---

[6] The Injunction is also unclear as to how Ms. Yazdi is to "return" the Confidential Information given that she no longer has access to it.

This is unnecessary, as even her best efforts may (and likely will) be deemed insufficient by the Plaintiffs.

Under these circumstances, *American Red Cross* is instructive. Indeed, the language in the Injunction and the *American Red Cross* decision could be viewed as materially similar, especially if read in a vacuum.[7] Thus, like the defendant in *American Red Cross*, Ms. Yazdi has no way to know which documents the Plaintiffs contend contain "Confidential Information" sent to Ms. Yazdi as an employee and not a spouse. 143 F.3d at 1412. Plaintiffs have access to the forensic review and could answer this question, but to date, they have not. Put simply, while Ms. Yazdi will undertake best efforts to comply with her understanding of the Final Order, clarifying the injunction will place the Parties on better footing to proceed.

Refraining from "using or further disclosing" ZBC's Confidential Information. These same concerns apply to the third bullet point of the Final Order, which requires Ms. Yazdi to "refrain from using or further disclosing *any* of ZBC's Confidential Information." [Doc. 134 at 41 (emphasis added)]. Because

---

[7] *Compare* [Doc. 134 at 41 ("Ms. Yazdi shall return to ZBC all Confidential Information in her possession, custody, or control within seven (7) days of this Order")] *with American Red Cross*, 143 F.3d at 1412 (barring the defendant from "possessing, copying, or making unauthorized use of Plaintiff's lists or any other documents that contain trade secrets that are the proprietary property of Plaintiff.")

the breadth of the prohibited conduct is uncertain, Ms. Yazdi has legitimate, reasonable, and significant concerns that Plaintiffs may contend *any* public statement she may make about Mr. Brown, ZBC, or Zac Brown Band uses or discloses "Confidential Information."  Neither the Parties nor this Court should have to engage in further litigation on that score.

Two examples make this point.  Presumably a statement by Ms. Yazdi that "Zac Brown's branded wine is disgusting" would not involve confidential information, because it is Ms. Yazdi's opinion, and the wine presumably can be purchased at a participating retailer.  By contrast, a statement that "Zac Brown's branded wine is swill, which is sad given that he makes 'x' dollars from it annually" could involve the business-related and (presumably) guarded information about annual sales.  Plaintiffs, however, may say that both statements violate the Final Order by claiming that Ms. Yazdi only learned about the branded wine as an employee of ZBC.

Similarly, imagine Ms. Yazdi saying in public—whether published or not— that these proceedings and/or the divorce proceedings led her to believe that "Zac Brown is not who he purports to be; he's not the person fans think he is."  Then, consider a statement by Ms. Yazdi that "Zac Brown is not who he claims to be publicly or to his fans; he insisted on collecting x dollars from the show in 'y' venue, which required the venue to inflate the cost of the tickets to satisfy Zac."

The first statement does not refer to any business-related information, but the second does.  Nevertheless, Plaintiffs may claim that the first statement is also based on Ms. Yazdi's knowledge of Ms. Brown's possible strategic efforts to construct an appealing public image.

Perhaps such disagreements are inevitable, but they do not have to be.  At the very least they can be mitigated by clarifying the Injunction, which is appropriate for at least one additional reason: the United States Constitution.  Both Mr. Brown and Ms. Yazdi are public figures, and they were before their relationship. [Tr. Vol. 3B, at 732-34].  Consequently, their own statements, and statements they may make about the other are entitled to the full protection of the First Amendment to the United States Constitution.  *See New York Times Co. v. Sullivan*, 376 U.S. 254, 283–84 (1964).  As the Eleventh Circuit suggested in *American Red Cross*, "imposing impermissible prior restraints" on her public statements not reasonably related to her employment with ZBC could be unconstitutional.  143 F.3d at 1411 n.5.

**2.  The Phrase "Using or Further Disclosing" Should be Clarified.**

Because Ms. Yazdi is uncertain as to what kind of information is subject to the Injunction, she also cannot know what would be an impermissible use or disclosure of the same.  Clarifying the Injunction would provide her with greater certainty about what "exactly what conduct is proscribed."  *Am. Red Cross*, 143

F.3d at 1411 (citing *Hughey*, 78 F.3d at 1531).

Here too, examples prove the point. Ms. Yazdi forwarded herself emails from ZBC referring to her 401k, pay and benefits, and tax returns. [Ex. D8; Tr. Vol. 3B, at 807:3-15; Ex. P133; Ex. D19; Tr. Vol. 3B, at 812:1-10]. One could argue that these emails contain data and information relating to the business of ZBC. But Ms. Yazdi should be permitted to "use" this information for purposes required by law, including filing accurate tax returns, and similar lawful purposes. The same is true about information—other than ZBC's own financial data and information—contained in ZBC's business-related emails with the types of vendors that Ms. Yazdi may use in her personal business. For example, Ms. Yazdi may engage a social media consultant and ask about methods of analysis she learned in the context of her employment, and doing so would not require her to reveal ZBC's information (e.g., asking whether the consultant considered a certain platform or analysis).

This concern can be addressed in at least two ways. One is to clarify the prohibited "use" of "confidential information" does not extend to Ms. Yazdi's personal business endeavors so long as she does not disclose the conclusions, findings, or material information ZBC provided to its vendors. Another remedy would be to define "confidential information" as excluding methods used by ZBC's vendors, which would preserve the confidentiality of the underlying data

and information about ZBC's business activities.

### 3. The Final Order Can Be Clarified Without Limiting Plaintiffs' Intended Relief.

As explained, the clarifications sought by Ms. Yazdi are consistent with the Summary Judgment and Final Orders and controlling law. They can also be adopted without diminishing the relief Ms. Yazdi understands the Court to have ordered after trial. An appropriate clarification could be as follows:

- For purposes of the **PERMANENT INJUNCTION** entered by the Court, the phrase "Confidential Information" is limited to "data and information (a) relating to the business of ZBC; (b) that is disclosed to, developed by or learned by Ms. Yazdi; (c) in the course of her employment with ZBC; (d) has value to ZBC; and (e) is not generally known to its competitors." *See* [Doc. 101 at 17-18].

- Further, for purposes of the **PERMANENT INJUNCTION** entered by the Court, "Confidential Information" does not include opinions of Ms. Yazdi that do not reference or identify specific financial information or strategic business decisions of ZBC, nor does "Confidential Information" include statements or communications about Mr. Brown or ZBC that do not reveal specific financial information or business strategies, adopted or contemplated, of either.

- Further, for purposes of the **PERMANENT INJUNCTION** entered by the Court, the word "using" and "disclosing" means publishing, revealing, or accessing specific financial information about ZBC's

business activity, as opposed to generalized methods of analysis conducted by ZBC's vendors.

- Further, for purposes of the **PERMANENT INJUNCTION** entered by the Court, Ms. Yazdi shall return all emails satisfying the above definition of Confidential Information to ZBC, other than those relating to her own personal financial information, and, if Plaintiffs contend the production is insufficient, it shall identify other communications it contends are subject to the Final Order.

These slight changes adopt the definition of "Confidential Information" from the Summary Judgment Order, and they will prevent likely unintended consequences leading to additional litigation before this Court.

### 4. In the Alternative, the Final Order should be modified or partially stayed.

Everything said to this point assumes that Ms. Yazdi's arguments accurately reflect the Court's intent in entering the injunction. If not, then Ms. Yazdi respectfully submits that the injunction is overbroad and unlawful, and respectfully requests that the Court modify the injunction along these lines, or else stay the injunction pending appeal.

As alluded to earlier, a district court may modify an injunction—as opposed to simply clarify it—in light of "subsequent changes in the facts or the law, or for any other good reason." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 578 (5th

Cir. 1974).[8] In determining whether to grant such a modification, "a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *In re Transcontinental Gas Pipeline Company, LLC*, 1:16-CV-02991, 2017 WL 2622323, at *2 (N.D. Ga. Mar. 30, 2017) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984)). And as discussed, Rule 65 requires any injunction issued to "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B),(C). Here, if the Injunction is not *best* read as Ms. Yazdi suggests above, then (as in *America Red Cross*), it is "so vague as to violate Rule 65(d)[.]" 143 F.3d at 1412.  It also cites the Employment Agreement as the basis to determine what is Confidential Information, which Rule 65(b) does not permit.

And if the Court is unwilling to go that far, Ms. Yazdi has no choice but to respectfully request a stay of the injunction pending appeal. Obviously, district courts "rarely stay a preliminary injunction pending appeal given that the test for a stay is so similar to the test for a preliminary injunction." *Democratic Executive Committee of Florida v. Detzner*, 347 F. Supp. 3d 1017, 1032 (N.D. Fla. Nov. 15, 2018). Still, an enjoined party is required to ask, since Federal Rule of Appellate

---

[8] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Procedure 8(a) says that "[a] party must ordinarily move first in the district court" for "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending."

So, if the Injunction really means what Plaintiff suggests, and not what Ms. Yazdi contends (as discussed above), the stay factors are satisfied. These include: "(1) the movant's likelihood of success on appeal, (2) the potential for irreparable injury to the movant in the absence of a stay, (3) whether a stay would substantially harm other parties, and (4) whether the stay serves the public interest." *Pine Ridge Recycling, Inc. v. Butts County,* 874 F. Supp. 1383, 1386 (M.D. Ga. 1995) (citing *In re Federal Grand Jury Proceeding (Cohen)*, 975 F.2d 1488, 1492 (11th Cir.1992)).

First, Plaintiffs' reading of the Injunction is overbroad under Rule 65, and Ms. Yazdi is likely to succeed on the merits of an appeal to that end. *See*, *e.g.,* 143 *American Red Cross*, 143 F.3d at 1412.

Second, Ms. Yazdi would be irreparably harmed by the imposition of a post-marital nondisclosure agreement she never signed. Ms. Yazdi is, after all, a public figure, and it would offend both her First Amendment rights and her pecuniary interests to be barred from speaking about Mr. Brown and aspects of their relationship simply because Mr. Brown objects to the content of what she has to say.

Third, and for that same reason, a stay of the Injunction's overbreadth would not impose any cognizable harm on Mr. Brown—since Mr. Brown has no contractual right to bar Ms. Yazdi from talking about anything other than his and his company's confidential business information. The fact that Mr. Brown is a celebrity does not mean that any negative information about him is confidential information about his business.

Finally, a stay to this effect is necessarily in the public interest. Staying the Injunction along the lines discussed honors the public's interests in *both* the right to contract and the right to speak freely, The public would be disserved, on the other hand, by converting a confidentiality clause in an employment agreement into a post-marital nondisclosure agreement—not least because, as the Final Order recognized, discussion of Mr. Brown and Ms. Yazdi's marriage is a matter of public interest.

Simply put, if the Injunction really means what Plaintiffs suggest, and not what Ms. Yazdi asks this Court to clarify that it means, the injunction is overbroad—and this Court should modify it accordingly, or stay it pending appeal to that extent.

Respectfully submitted this 20th day of January, 2026.

*/s/ Josh Belinfante*
Josh Belinfante
Ga. Bar No. 047399
jbelinfante@robbinsfirm.com

Miles C. Skedsvold
Ga. Bar No. 371576
mskedsvold@robbinsfirm.com
Jane Ashley Ravry
Ga. Bar No. 451038
jaravry@robbinsfirm.com
ROBBINS ALLOY BELINFANTE
   LITTLEFIELD LLC
500 14th Street, NW
Atlanta, Georgia 30318
T: (678) 701-9381
F. (404) 856-3255

*Counsel for Defendant Kelly Yazdi*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that this notice has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), Times New Roman, double-spaced, 14 point font.

This 20th day of January, 2026.

*<u>/s/ Josh Belinfante</u>*
Josh Belinfante

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day served the foregoing **DEFENDANT'S MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, TO MODIFY OR STAY THE PERMANENT INJUNCTION PENDING APPEAL** on all parties who have entered an appearance in this case by electronically filing it with the Clerk of the Court using the CM/ECF filing system, which will automatically send an email notification of such filing to counsel for such parties.

This 20th day of January, 2026.

*/s/ Josh Belinfante*
Josh Belinfante